UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| VALORIE A. BROWN,<br>    Plaintiff,<br><br>vs.<br><br>MEGAN J. BRENNAN,<br>POSTMASTER GENERAL,<br>U.S. POSTAL SERVICE,<br>    Defendant. | §<br>§<br>§<br>§   Civil Action No. SA-16-CV-0563-OLG<br>§<br>§<br>§<br>§<br>§ |

### DEFENDANT'S MOTION TO DISMISS
### AND MEMORANDUM IN SUPPORT THEREOF

TO THE HONORABLE ORLANDO L. GARCIA, U.S. DISTRICT JUDGE:

> "Plaintiff's resort to alleging every kind of discrimination for which [s]he could possibly qualify . . . suggests the poverty of h[er] position."[1]

### Overview

Plaintiff's Original Complaint in this case comprises 78 pages and 182 separate paragraphs. Plaintiff purports to bring 28 separate claims covering three time frames and three separate EEO complaints, based on six overlapping legal bases,: race discrimination (Caucasian), gender discrimination (female), age discrimination (59 as of her first September 2012 claim), disability discrimination (various conditions based upon on-the-job injuries), retaliation, and hostile work environment.

Plaintiff's claims are all smoke and no fire. While Ms. Brown claims she was subjected to harassment and discrimination which culminated in an alleged constructive discharge in December of 2015, it is undisputed that Plaintiff did not actually work as a letter carrier for the

---

[1] *Cooper v. New York State Dep't of Human Rights*, 986 F. Supp. 825, 829 (S.D.N.Y. 1997).

1

Postal Service after April of 2013. After that time, she was out of work because of an on-the-job injury.

As Defendant Brennan ("USPS" or "the Postal Service") will show in this Motion, brought pursuant to 12(b)(6), Plaintiff's Complaint should be dismissed with prejudice because: 1) she has failed to exhaust administrative remedies; and, 2) she has failed to state a claim for relief under the *Iqbal/Twombley* standard.

Plaintiff's 28 factual claims are set forth below, renumbered and organized by the three separate time frames covered by Plaintiff's three EEO claims underlying this case. On their face, most of these claims do not state a valid claim upon which relief can be granted.

**2013[2] race discrimination claims (September 2012 – February 2013) (Admin Case No. 4G-780-0022-13)**

1) On September 21, 2012, Plaintiff's supervisor approached her desk and started yelling at her [;] refused to give her a CA-17, and embarrassed her in front of her coworkers;

2) On October 4, 2012 [,] Plaintiff's supervisor yelled at her, and initially refused to give her a CA-17 as requested;

3) On October 31 [,2012], Plaintiff's supervisor again refused to give her a CA-17;

4) Between September and December 15, 2012, Plaintiff's supervisor stood directly behind her with her arms folded and stared at her in an intimidating manner to intimidate her;

5) In January of 2013 [,] Plaintiff's supervisor conducted harassing route inspect[ions] and accused her of not hav[ing] parcels in delivery order, took her [driver's] license away while she was delivering her route, and criticized the way [s]he was delivering her route;

---

[2] The Postal Service has classified Plaintiff's claims as "2013," "2014," or "2016" claims because these were the three years her three separate EEO complaints originated. The "2013" claims include four events which allegedly occurred in 2012; the "2014" claims include one event alleged to have occurred on July 14, 2013, and one which occurred in both 2013 and 2014; and the "2016" claims all pertain to events which allegedly occurred during calendar year 2015.

6) Around January of 2013 [,] Plaintiff's supervisor conducted another harassing route evaluation of Plaintiff which she found fault in everything Plaintiff did on her route;

7) [At times unspecified], Plaintiff's supervisor . . . denied her usage of the restroom nearest to her case . . . after Plaintiff requested to use the restroom closest to her case due to her medical condition;

8) [At times unspecified], Plaintiff's supervisor denied her requests for accommodation, that is to use the restroom nearest to her case, forcing her to use another restroom further from her work location; and

9) [At times unspecified], [Defendant] failed to investigate Plaintiff's claims of discrimination.

(Plaintiff's Original Complaint, ¶ 85).[3]

**2014 race discrimination claims (July 14, 2013 – December 24, 2014) (Admin Case No. 4G-780-0105-14)**

[10] On or after July 14, 2013, Plaintiff was wrongfully denied Continuation of Pay and sick leave b[u]y back request;

[11] On January 21, 2014 [,] when . . . Plaintiff was wrongfully accused . . . of falsifying her CA-17;

[12] On January 21, 2014 management treated Plaintiff differently than other employees and intentionally misstated Postal policies when her supervisors told her that she could no longer fax CA-17s to them, and she had to provide a "hall pass" (medical provider sheet) for future medical appointments;

[13] Defendant's employees without explanation, beginning in January 24, 2014 and throughout that year, unnecessarily delayed Plaintiff's CA-17 which impacted her pre-scheduled medical appointments;

[14] In April of 2014, Plaintiff received a letter from Defendant's Health and Resources Management which contained many discrepancies regarding her

---

[3] Plaintiff unsuccessfully attempted to also plead these race discrimination claims occurring between September 2012 and February, 2013 as gender discrimination claims, age discrimination claims, and disability discrimination claims, but with the incorrect factual predicate. *See* Plaintiff's Complaint at ¶¶ 107-113, 129-131, 144-150. Neither the Court nor the Postal Service should re-write Plaintiff's Complaint for her. As set forth, *infra*, even if the Court were to assume that Plaintiff meant to reiterate the 2012-2013 factual claims under the proper chronological headings in her later titled sections on the other bases alleged, the claims would still fail.

    injury claims. Plaintiff believes that discrepancies with the aforementioned letter were intentional and intended to delay or result in the denial of her work related injury claims for Worker Compensation;

[15] On August 20, 2014 an employee of Defendant's Health and Resources Management Specialist based on inaccurate information received from Plaintiff's supervisors wrote upon a CA-17 that, Plaintiff was already being compensated for the right shoulder injury from a previous private insurance claim;

[16] In 2013 and 2014 Plaintiff was accused of falsifying OWCP claim;

[17] On or about September 24, 2014 Plaintiff was wrongfully denied a copy of her OWCP file;

[18] Plaintiff's supervisors refused to assist her regarding retaining her health and life insurance when she informed her supervisors of the letter she received on October 19, 2014 notifying her that, her health and life insurance benefits would be terminated in thirty (30) days;

[19] On December 24, 2014 Plaintiff's supervisor attempted to coarse [sic] Plaintiff by promising to help her retain her health and life insurance Benefits if she submitted retirement paperwork effective December 31, 20 14; and

[20] Failed to investigate Plaintiff's claims of discrimination.

(Plaintiff's Complaint, ¶ 92).[4]

**2016 claims (May 25, 2015 – December 31, 2015) (Admin Case No. 4G-780-0061-16)**

[21] On May 25, 2015 [,] Plaintiff's supervisors wrongfully and intentionally marked her absent without leave for a full day, when she was approved for Leave Without Pay – Injured on Duty (LWOP-WPIOD);

[22] On July 4, 2015 [,] Plaintiff's supervisors wrongfully and intentionally marked her absent without leave for a full day, when she was approved for Leave Without Pay-Injured on Duty (LWOP-WPIOD);

[23] On October 1, 2015 Plaintiffs supervisors wrongfully and intentionally marked

---

[4] Plaintiff has first alleged these 2014 claims as race discrimination claims. Later in the Complaint, she re-alleges them as gender discrimination claims (Paragraphs 114-121), and age discrimination claims (Paragraphs 132-137).

4

>     her absent without leave for a full day, when she was approved for Leave
>     Without Pay-Injured on Duty (LWOP-WPIOD);
>
> [24] On October 2, 2015 [,] Plaintiff's supervisors wrongfully and intentionally marked
>     Mrs. Brown absent without leave for eight hours, when she was approved
>     for Leave Without Pay-Injured on Duty (LWOP-WPIOD);
>
> [25] Between October 3, 2015 through October 8, 2015 [,] Plaintiff's supervisors
>     wrongfully and intentionally inputted her timekeeping as thirty-two (32) hours of LWOP;
>
> [26] Between October 10, 2015 through October 16, 2015 Plaintiffs supervisors
>     wrongfully and intentionally marked Mrs. Brown absent without leave for
>     thirty-two hours, when she was approved for Leave Without Pay-Injured on
>     Duty (LWOP-WPIOD);
>
> [27] On December 15, 2015 Plaintiff was constructively discharged as a result
>     of multiple years of discrimination; and
>
> [28] Failed to investigate Plaintiffs claims of discrimination.

(Plaintiff's Complaint, ¶ 100).[5]

## Legal Standards

### Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may assert at the time of answer by motion the defense of "failure to state a claim upon which relief can be granted." Review is generally limited to the contents of the complaint and matters properly subject to judicial notice.[6] In an employment discrimination case, the Court may take judicial notice of the administrative Report of Investigation if those documents are referenced in Plaintiff's Complaint and are central to her claims, without converting the motion to dismiss into a motion for summary judgment.[7] To survive a Rule 12(b)(6) motion, a Complaint must contain "more than labels and conclusions,

---

[5] Plaintiff first alleges these 2015 claims as race discrimination claims. Later in the Complaint they are re-alleged as gender discrimination claims (Paragraphs 122-128), and age discrimination claims (Paragraphs 138-143).
[6] *See* **Tellabs, Inc. v. Makor Issus & Rights, Ltd.**, 551 U.S. 308, 322 (2007).
[7] *See* **Robinson v. TCI/US West Communications Inc.**, 117 F.3d at 904.

and a formulaic recitation of the elements of a cause of action will not do." The "[f]actual allegations must be enough to raise a right to relief above the speculative level." [8] A plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] Plaintiff cannot state a claim for relief if she has not exhausted her administrative remedies.

## Argument

I. **PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.**

   A. **Federal Employees Must Comply With the Strict Time Limits for Pursuing Their Administrative Claims of Discrimination.**

The governing federal regulations require that an aggrieved federal employee must contact an EEO Counselor within 45 days of any alleged discrimination.[11] Claims not filed within this mandatory time limit are barred.[12] Even assuming that the aggrieved employee makes timely contact with her EEO Counselor, the federal regulations further require that once the employee receives notice of her right to file a formal complaint of discrimination, she only has 15 days to submit her administrative complaint.[13] Once again, failure to meet this deadline results in dismissal of the claim in federal district court.[14]

---

[8] ***Bell Atlantic Corp. v. Twombley***, 550 U.S. 544, 555 (2007).
[9] ***Id***. at 570.
[10] ***Ashcroft v. Iqbal***,  556 U.S. 662, 678 (2009).
[11] *See generally* 29 C.F.R. § 1614.105; ***Alexander v. Gardner-Denver Co.***, 415 U.S. 36, 47 (1974).
[12] ***Teemac v. Henderson***, 298 F.3d 452, 454 (5th Cir. 2002).
[13] 29 C.F.R. § 1614.106(b).
[14] *E.g.,* ***Casimier v. U.S. Postal Serv.*** 142 F. App'x 201, 204 n.1 (5th Cir. 2005) (failure to file formal EEO complaint within fifteen days of the Notice of Final Interview under Section 1614.106(b) was a failure to exhaust administrative remedies supporting summary judgment dismissal of claim); ***Joseph v. Potter***, No. H-04-1886, 2006 WL 1581894, at *2 (S.D. Tex. June 6, 2006) ("If an employee fails to file a formal EEO complaint within fifteen days of receiving

### B. Claim No. 10 Is Barred Because Plaintiff Did Not Timely Contact Her EEO Counselor.

With respect to her 2014 claims, Plaintiff first contacted an EEO Counselor on March 5, 2014.[15] Accordingly, her claim in her federal court Complaint alleging that she was denied Continuation of Pay and a sick leave buy back request on **July 14, 2013** is untimely by over a year and cannot proceed.

### C. Claim Nos. 21-27 Are Mostly Barred Because Plaintiff Did Not Timely Contact Her EEO Counselor, Nor Timely File a Formal Complaint of Discrimination.

With respect to her 2016 claims, Plaintiff waited to contact an EEO Counselor until January 5, 2016.[16] Only the December 15, 2015 constructive discharge claim (Claim No. 27) was raised to an EEO Counselor within 45 days. Accordingly, all of the other claims are barred. In addition, on April 4, 2016, Plaintiff, while represented by current counsel, was warned that if she did not file a formal complaint of discrimination within 15 days, her claims would be deemed waived.[17] Instead of completing the process she had begun by filing an EEO administrative complaint, Plaintiff exercised her election to pursue her age discrimination claim directly in federal court, by submitting her Notice of Intent to Sue on April 20, 2016.[18] Accordingly, the only portion of her 2016 claims which survive is Claim # 27 with respect to age discrimination only.

## II. PLAINTIFF HAS ALLEGED INSUFFICIENT FACTS TO STATE A VALID CLAIM FOR RELIEF.

---

notice of his right to do so, he has failed to timely exhaust his administrative remedies, and he is therefore barred from pursuing his discrimination claim in federal court.") (citing ***Oaxaca v. Roscoe***, 641 F.2d 386, 388 (5th Cir. 1981), and ***Casimier***).

[15] APPX 046-049.
[16] APPX 082.
[17] APPX 063-064.
[18] APPX 069.

Notwithstanding 182 paragraphs of allegations, Plaintiff has failed to satisfy the *Twombley/Iqbal* standard of "facial plausibility" because the Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."[19]

### A. Plaintiff Has Failed to State a Claim for Disparate Treatment Discrimination or Retaliation Because It Is Implausible That She Sustained a Materially Adverse Employment Action.

Under a disparate treatment theory of discrimination – whether it be race discrimination, gender discrimination, age discrimination, or disability discrimination -- an essential element of Plaintiff's case is that she sustained an adverse employment action.[20] What this means in the Fifth Circuit is that Plaintiff must establish that she sustained an "ultimate employment decision."[21] "Employment actions are not adverse where pay, benefits, and level of responsibility remain the same."[22] Adverse employment actions in the discrimination context include acts such as hiring, granting leave, discharging, promoting, and compensating.[23] However, a *de minimus* loss of pay is not considered actionable.[24] Relatedly, in order to cross the threshold of a "plausible" retaliation claim, Plaintiff must plead that she sustained a "materially adverse employment action," which means that the "employer's actions were harmful to the point that

---

[19] *Iqbal*, 556 U.S. at 678.
[20] *See generally* **Ogden v. Brennan**, No. 15-50698, 2016 WL 3996702, at *1 (5th Cir. July 25, 2016) (age discrimination); **Fowler v. Timber Rock R.R., L.L.C**, 617 F. App'x 306, 307 (5th Cir. 2015) (race discrimination).
[21] *See generally* **McCoy v. City of Shreveport**, 492 F. 3d 551, 559 (5th Cir. 2007).
[22] **Watts v. Kroger Co.**, 170 F.3d 505, 512 (5th Cir. 1999).
[23] **Mattern v. Eastman Kodak Co.**, 104 F.3d 702, 707 (5th Cir. 1999), *abrogated on other grounds by* **Burlington Northern & Santa Fe Ry Co. v. White** 548 US 53 (2006).
[24] **Walker v. Thompson**, 214 F. 3d 615, 629 (5th Cir. 2000), *abrogated on other grounds by* **Burlington Northern & Santa Fe Ry Co. v. White** 548 US 53 (2006).

they could well dissuade a reasonable worker from making or supporting a charge of discrimination."[25]

With respect to all of her claims, Plaintiff has failed to plead/explain how she was materially harmed, whether a reasonable employee would have been dissuaded from filing an EEO complaint, or whether she was economically affected by the alleged mistreatment. Negative comments and criticism of an employee's job performance is clearly insufficient[26] (Claim Nos. 1, 5-6, 11, 16). A plaintiff's claim of speculative, or emotional injuries is insufficient to establish a materially adverse employment action.[27] (*E.g.,* Claim No. 14). Closer monitoring of an employee's work and dirty looks are insufficient.[28] (Claim Nos. 1 and 4). The alleged improper alteration and delay of worker's compensation documents and insurance forms, which are not shown to reduce pay or benefits are insufficient.[29] (Claim Nos. 2-3, 13-15, 18).

With respect to Claims 7 and 8, Plaintiff does not disclose how she was harmed by using a restroom which was only 50 feet further away, as the Administrative Judge determined in the Decision on Record: "[d]espite Complainant's alleged need to use the bathroom every 1 ½ hours,

---

[25] **Burlington N. & Santa Fe Ry. V. White**, 548 U.S. 53, 61 (2006).
[26] *See, e.g.*, **Oliphant v. State of Conn. Dep't of Transp.**, No. 3:02cv700, 2006 WL 3020890, at * 7 (D. Conn. Oct. 23, 2006) (oral and written counseling's regarding poor job performance not materially adverse – retaliation case); **Messer v. Meno**, 130 F.3d 130, 140 (5th Cir. 1997) (close monitoring of plaintiff's work and criticism of plaintiff's work and conduct, *inter alia*, were not ultimate employment decisions).
[27] *See, e.g.*, **E.E.O.C. v. Fox News Network, LLC**, 806 F. Supp. 2d 128, 137 (D.D.C. 2011) ("Plaintiff also argues that [she] suffered emotional distress during contract negotiations because of the 'constant fear of being discharged, losing her livelihood and losing her medical insurance benefits.' … Emotional distress and other purely speculative injuries … have been consistently rejected in our Circuit as legally sufficient to constitute a materially adverse action, and thus [the] alleged injuries are no different here.") (citations omitted).
[28] *See, e.g.*, **Bragg v. Navistar Int'l Transp. Corp.**, 164 F.3d 373, 378 (7th Cir. 1998) (unsatisfactory performance reviews and close supervision of plaintiff's work insufficient to state adverse action in retaliation case); **Sweeney v. West**, 149 F.3d 550, 556 (7th Cir. 1998) (dirty looks or silent treatment not enough to support a retaliation claim).
[29] *See* **Johnston v. Henderson**, 144 F. Supp. 2d 1341, 1354-56 (S.D. Fla. 2001).

there was no evidence presented that Complainant had any medical condition that would have prevented her from anticipating her need to use the restroom, or from timely accessing the restroom that was farther away. And although the restroom that was nearer to Complainant's case was a handicapped restroom, and the one further away was not . . . , Complainant failed to allege or demonstrate that she had any physical limitations that created a need for her to use a handicapped restroom."[30] Likewise, in her federal court Complaint, Plaintiff has not alleged that she was materially harmed by the extra 50 foot walk to the restroom.

With respect to Claim Nos. 22-26, Plaintiff has not explained how the allegedly mistaken designation of one unpaid status to another unpaid status – Leave Without Pay – Injured on Duty, instead of Absent Without Leave – materially harmed her. She has not alleged that she was disciplined or lost pay or benefits as a consequence of the AWOL designation. Nor has she explained whether or not the designation was corrected, and if so, how she might have been harmed in the interim. As the Postal Service's April 4, 2016 Notice of Right to File observed, "[a] review of records revealed that you were not issued any disciplinary action for the AWOL absences you had referenced in your complaint. Also, records reflect that you have been on the Department of Labor – Office of Workers' Compensation Programs periodic compensation rolls . . . continuously from 12/14/14 through at least . . . 3/5/16. HRM personnel advised that in order to receive full compensation . . . , you should have no actual work hours during the relevant time periods. As a matter of more accurate record keeping, the District TACS unit mailed PS Forms 2240 to re-characterize your leave as . . . OWCP LWOP hours . . . Prior timekeeping had no impact on your receipt of compensation from OWCP. Also, the corrections

---

[30] APPX 016.

submitted . . . will have no retroactive impact on your receipt of OWCP compensation."[31] USPS submits that Plaintiff has not alleged that she was harmed by the AWOL designation because she in fact was not harmed.

Plaintiff's repeated allegations that the Postal Service "failed to investigate Plaintiff's claims of discrimination" (Claim Nos. 9, 20, and 28) are not explained. The claims were certainly investigated as part of the EEO administrative process, as a more than ___ page administrative record would reflect. It is the act of alleged discrimination itself which **may** cause harm to an employee -- the failure to investigate a claim of discrimination is not independently actionable.[32]

Ordinarily, a constructive discharge (Claim No. 27) would obviously be a materially adverse employment action. But this is not the ordinary case in which an allegedly aggrieved employee has actually lost a job she was performing and was capable of performing. Plaintiff has not actually performed any work for the Postal Service since April 8, 2013, according to her own Complaint.[33] It is undisputed that she has been receiving OWCP benefits (75% of her former salary) since at least December 14, 2014.[34] Moreover, despite the suggestion of a reasonable accommodation claim, Plaintiff stridently maintains that since 2013 her medical restrictions do not allow her to do **any work** for the Postal Service.[35] Under these circumstances, even assuming that Valerie Brown was constructively discharged when she submitted her letter

---

[31] APPX 063.
[32] ***Robles v. Texas Tech Univ. Health Sci. Ctr.***, 131 F. Supp. 3d 616, 629 (W.D. Tex. 2015) ("Even if Defendants refused to investigate Plaintiff's allegations [of discrimination], this does not demonstrate Defendants discriminated against Plaintiff ").
[33] Complaint, ¶ 65.
[34] APPX 063.
[35] APPX 111-112.

of resignation December 15, 2015,[36] she was not materially harmed as a result of her resignation from the Postal Service.

### B. Plaintiff Has Failed to State a Plausible Claim for Harassment Because the Harassment Alleged Was Not Based On Any Protected Classification, It Was Not Severe or Pervasive, and It Did Not Occur While Plaintiff Was Working.

In order for Plaintiff to state a claim for relief for a hostile work environment, the challenged conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."[37] The harassment must be sufficiently severe and pervasive to alter the conditions of the victim's employment.[38] In order to satisfy this requirement, the plaintiff must show that the "workplace is so permeated with discriminatory intimidation, ridicule, and insult" as to "create an abusive working environment."[39] This is an extremely high bar to meet.[40] In addition, the challenged harassment must be based explicitly on the plaintiff's protected characteristic(s) to be actionable.[41] In addition, Fifth Circuit law requires that the alleged

---

[36] Complaint, ¶ 82.
[37] **Shepherd v. Comptroller of Pub. Accounts**, 168 F.3d 871, 874 (5th Cir. 1999).
[38] **Harris v. Forklift Syst., Inc.**, 510 U.S. 17, 21 (1993).
[39] *Id*.
[40] *See, e.g.,* **Indest v. Freeman Decorating, Inc.**, 164 F.3d 258, 264 (5th Cir. 1999) ("All of the sexual hostile environment cases decided by the Supreme Court … involved patterns of … extensive, long-lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.  The extreme facts recited … highlight the intensity of the objectionable conduct that must be present … to constitute an actionable hostile environment claim."); **DeAngelis v. El Paso Mun. Police Officers Ass'n**., 51 F.3d 591, 595-596 (5th Cir. 1995) ("[M]ere utterance of an … epithet which engenders offensive feelings in an employee" is not enough to constitute hostile environment harassment).
[41] *See, e.g.,* **Farpella-Crosby v. Horizon Health Care**, 97 F.3d 803, 806 n.2 (5th Cir. 1986) ("Sex-neutral hostile conduct cannot be used to support a hostile environment claim.  Title VII does not protect employees from hostile conduct that is not based on their protected status.");  environment claim);  **McCray v. DPC Industries, Inc.**, 942 F. Supp. 288, 292-93 (E.D. Tex. 1996) ("To establish a prima facie case of 'hostile work environment' based on race, a plaintiff must show more than that he was treated badly and that he was black. ... [A]n abusive working environment [under *Meritor*] requires a plaintiff to 'prove more than a few isolated incidents of racial enmity.'

harassment "unreasonably interfere with an employee's workplace performance,"[42] or "undermine their workplace competence."[43] Where an employee was "on medical leave for two months prior to his resignation," it is difficult to find that "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign."[44]

Plaintiff's Complaint does not allege that the challenged conduct was based explicitly on any of her protected characteristics, and there was no evidence in the administrative record to support such a conclusion. Nor has she alleged the type of opprobrious conduct needed to support a claim of hostile work environment. The Final Agency Decision correctly found that: "the record is absolutely devoid of any evidence that management allegedly singled her out or treated her unfairly because of her protected classes. The complainant offered no documents, witness testimony or other direct evidence indicating that management used slurs, epithets, or promoted stereotypes or engaged in discriminatory behavior based on the complainant's protected classes. . . . the complainant testified that she had not worked since April 2013. Therefore, the conduct the complainant attributed to management could not have affected her work performance, as she was not working at the time of the claims she raised . . ."[45]

Where the plaintiff's allegations do not meet the high standard required for severe or pervasive conduct, it is appropriate to dismiss the case at the pleading stage under Rule

---

... Instead, 'there must be a steady barrage of opprobrious racial comments.'") (citations omitted)).
[42] *Shepherd*, 168 F.3d at 874.
[43] *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998).
[44] *Perret v. Nationwide Mutual Ins. Co.*, 770 F.3d 336, 339 (5th Cir. 2014) (citations omitted) (constructive discharge case).
[45] APPX 041-042.

12(b)(6), applying *Iqbal* and *Twombley*.[46]   Plaintiff's claims should be dismissed with prejudice.

### C. Plaintiff Has Failed to State a Plausible Constructive Discharge Claim.

This claim requires little analysis.  This is so because a constructive discharge claim "requires a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment."[47]   Accordingly, since Plaintiff's hostile work environment claim fails, her constructive discharge claim must also fail.  Dismissal of this claim is also appropriate.[48]

For all the foregoing reasons, Plaintiff's Complaint should be DISMISSED WITH PREJUDICE.

DATED: September 13, 2016                           Respectfully submitted,

                                                    **RICHARD L. DURBIN, JR.**,
                                                    United States Attorney


                                            By:     /s/ *Robert Shaw-Meadow*
AGENCY COUNSEL:                                     **ROBERT SHAW-MEADOW**
Xinyu Yang                                          Assistant United States Attorney
U.S. Postal Service Law Department                  Texas Bar No. 18162475
Southern Law Office                                 601 N.W. Loop 410, Suite 600
P.O. Box 227078                                     San Antonio, Texas  78216
Dallas, Texas  75222-7080                           Telephone: (210) 384-7355
                                                    Facsimile:  (210) 384-7312
                                                    E-mail: Rob.Shaw-Meadow@usdoj.gov

                                                    **CHARLES K. COOPER**

---

[46] *See, e.g.,* **Evans-Rhodes v. Northwest Diagnostic Clinic, P.A.**, No. 4:13-cv-01626, 2013 WL 5603003, at * 5-6 (S.D. Tex. Oct. 11, 2013); **Sherrod v. Prairie View A&M Univ.**, No. H-10-1858, 2011 WL 843936, at *5-6 (S.D. Tex. March 8, 2011).

[47] **Burrle v. Plaquemines Parish Government**, 553 F. App'x 392, 395 (5th Cir. 2014) (quoting **Landsgraf v. USI Film Products**, 968 F.2d 427, 430 (5th Cir. 1992)).

[48] *See, e.g.,* **Perret v. Nationwide Mutual Ins. Co.**, 770 F.3d 336, 339 (5th Cir. 2014).

                Assistant United States Attorney
                Texas Bar No. 24074070
                816 Congress Avenue, Suite 1000
                Austin, Texas 78701
                (512) 370-1262 (phone)
                (512) 916-5854 (fax)
                Charlie.Cooper@usdoj.gov

                **ATTORNEYS FOR DEFEENDANT**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system on this 13th day of September, 2016, and was served via ECF as follows:

Markes E. Kirkwood
Law Office of Markes E. Kirkwood P.L.L.C.
2600 McCullough
San Antonio, TX 78212
kirkwoodmarkes@yahoo.com

                /s/ *Robert Shaw-Meadow*
                **ROBERT SHAW-MEADOW**
                Assistant United States Attorney